with a fishing schooner, the Climax, from which the assistance of an additional crew was obtained, and the ship then reached Boston about the 11th of July, and before the master himself arrived, who came round by land. She was immediately libelled for salvage, and the cause was heard by Judge Davis, of the district court of the United States. The evidence in the case was very voluminous, making nearly one thousand folio pages, and eight days were occupied in reading it.

Messrs. Mason, C. G. Loring, Betton, Choate, Bartlett, and Brigham, for salvors.

C. P. & B. R. Curtis and Blair & Parsons, for respondents.

DAVIS, District Judge, made a decree, giving to the salvors one-half of the nett proceeds, reserving some points, made by the owners and insurers, arising out of the alleged misconduct and perjury of a portion of the salvors, as bearing upon another part of the case, and to be decided when the question of the division of the salvage was considered. The opinion was quite brief. The judge decided that the Nathaniel Hooper, though not derelict when the master and crew first left her, because they left with the purpose of return, yet became derelict when the master and crew afterwards gave up the pursuit of her, in the belief that she had sunk. And, being thus a case of derelict, he felt bound by recent decisions to apply the rule of one-half, as he considered this rule now so firmly established as to leave the court almost without a discretion in the matter, unless there were manifest reasons for reducing the salvage, of extraordinary force, which reasons he could not clearly perceive in this case. From this decree the owners and insurers claimed an appeal. But the parties subsequently agreed among themselves upon the amount of salvage, and the decree of the district court was modified accordingly, to the effect that the whole sum to be awarded as salvage of the ship and cargo should be $25,000, and that a further sum of $2,000 should be charged on the funds in court for fees of the libelants' counsel, whereof the sum of $1.000 was to be paid to the counsel of the libelants in the original libel, and a like sum of $1,000 was to be paid to the counsel of the libelants in the supplemental libel.[1] The costs of the cause to be charged on the funds in court.

## Case No. 10,031.

### The NATHANIEL HOOPER.

[See Case No. 10,032.]

[1] In the case of The Henry Ewbank [Case No. 6.376], decided in 1834 in this court, there were ten counsellors engaged, and they were allowed, by consent of parties, $5,000.

## Case No. 10,032.

### The NATHANIEL HOOPER.

[3 Sumn. 542; [1] 2 Law Rep. 133, 165. 1 Hunt, Mer. Mag. 334.]

Circuit Court, D. Massachusetts. May Term, 1839.

AFFREIGHTMENT — GENERAL AVERAGE — VOYAGE WAIVED—CONTRIBUTION—PRIZE PROCEEDINGS—SALVAGE—DELIVERY OF SHIP—DETERIORATION OF CARGO.

1. Where a ship, bound from Havana to St. Petersburg, with a cargo of sugars, shipped in part on freight and in part on half profits, with a right to enter and clear at Boston, in order to obtain a clean bill of health, struck on the south shoal of Nantucket. and was there, after a jettison of part of her cargo, abandoned by the master and crew, and the ship afterwards floated off the shoal, and was met and brought into port by salvors. and there libelled for salvage; and the ship was there repaired and made ready for sea: but the cargo was in part sold on account of damage. and part sold to pay duties, and part was delivered on bail to underwriters, and part was held in the custody of the court; and the ship was ready to take on board the cargo, if ready, but afterwards, owing to the admiralty proceedings, she was sold; *held,* under all the circumstances of the case, that the full freight of the sugars, of which there was a jettison, for the voyage, was to be allowed as part of the general average to be borne by the ship and cargo. and the freight, (pro rata). saved.
[Cited in Hugg v. Augusta Insurance & Banking Co., 7 How. (48 U. S.) 606; The Julia Blake, Case No. 7,578.]

2. No freight was due upon the sugars. sold at Boston on account of damage and their perishable nature; nor upon the sugars sold to pay duties; nor upon the sugars applied to pay the salvage.

3. Full freight was not due for the voyage upon the sugars delivered to the underwriters; because the ship had been sold before they were delivered to them on bail by the court; and, taking all the circumstances. the case was to be treated as one. in which both the owners of the ship, and of this part of the cargo, had reluctantly acquiesced in waiving any further prosecution of the voyage, as to that part of the cargo.
[Cited in Sayward v. Stevens, 3 Gray, 104.]

4. Full freight was not due for the voyage for the sugars in the custody of the court; because neither party was in any default on account thereof. the detention being occasioned by the common calamity, and the proceedings for salvage; and the owners thereof never having been in a condition to re-ship them.
[Cited in The Harriman, 9 Wall. (76 U. S.) 172.]
[Cited in Leckie v. Sears. 109 Mass. 428.]

5. But a pro rata freight was due upon the sugars delivered to the underwriters. and upon those detained in the custody of the court, for the voyage from Havana to Boston, upon the ground that there had been a mutual dispensation. by both parties, of any farther prosecution of the voyage.

6. No claim for half profits was admissible. as the cargo never arrived at St. Petersburg. and non constat. that it ever would have arrived there. or if it had arrived. would have yielded any profit, the whole matter of profits resting in contingency.

7. The freight. earned pro rata for the voyage. ought to contribute to the salvage with the ship and cargo.

8. In general, freight for the entire voyage can only be earned by a due performance of the

[1] [Reported by Charles Sumner, Esq.]